Kyle McLean (SBN 330580)
Lisa R. Considine (*pro hac vice forthcoming*)
Leslie L. Pescia (*pro hac vice forthcoming*)
SIRI & GLIMSTAD LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: kmclean@sirillp.com
Email: lconsidine@sirillp.com
Email: lpescia@sirillp.com

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MOREHOUSE and KERI SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>APPLE, INC.,<br><br>Defendant. | Case No.  5:25-cv-2988<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Jennifer Morehouse and Keri Smith ("Plaintiffs"), individually and on behalf of the Class defined below, respectfully submits the following Class Action Complaint against Defendant Apple, Inc. ("Apple") and alleges on personal knowledge, investigation of counsel, and information and belief as follows:

## **INTRODUCTION**

1.      Millions of people across the country enjoy the rituals of reading a book.  They browse the books at a bookstore, or through a website such Amazon.com, they purchase the book they like, read the book, and then afterwards they are free to do what they want with their book.  For many, their

old books adorn shelves as part of their home's décor, reminders of stories they enjoyed and can enjoy again and again.

2.    With the advent of digital e-readers and smartphones, companies have replicated this process in digital form. Users can log into applications like Amazon's Kindle or Apple Books, browse millions of titles, purchase the book that they select, and read the book on their device. Some of these companies also offer audio books in the same manner. Once the user finishes the book, it sits in their digital "library", where users store books for downloading and/or to read (and re-read) at their leisure.

3.    Like with their physical books, consumers purchase audiobooks and e-books assuming that the purchases they make will be accessible to them in perpetuity.

4.    However, for Apple Book users, this process is merely an illusion, one where consumers are led to believe they are purchasing the book, just like a physical book, but in reality the consumer is only purchasing only a revokable license to access that book – which means that access can be revoked at any time.

5.    Apple Books, formerly known as iBooks, is Apple's e-book reading and store application for its iOS, iPadOS, and macOS operating systems. Consumers can browse and purchase books, including both e-books and audiobooks, which are known as "digital goods[1]," through the Apple Books application.

---

[1] '"Digital good" means a digital audiovisual work, digital audio work, digital book, digital code, or digital application or game, whether electronically delivered or accessed.' Cal. Bus. & Prof. Code §17500.6(a)(7). "Digital book" is further defined under California law as "a work that is generally recognized int eh ordinary and usual sense as a book that is transferred electronically, including a work of fiction or nonfiction." *Id.* at §17500.6(a)(5). This includes "digital audio works," which includes a work that results from the electronic transfer of the readings of books or other written materials. *Id.* at §17500.6(3).

6.      On the Apple Books app, consumers browse these audiobooks and e-books available for purchase.  To purchase an audiobook the consumer clicks on a button that lists the price of an item directly under the item, and then the consumers clicks on the "purchase" button to complete purchase.

7.      Apple deceives consumers by making it appear that when they purchase a book, the purchaser is buying a copy of the book, which will be there to re-read any time. Unfortunately, that is not at all the case.

8.      Because Apple is only selling a revokable license that allows a consumer to access the book, some users have unexpectedly found that books they previously purchased were no accessible to them, despite having paid for them. For example, one user complained to Apple online, stating:

> It looks like a book I bought from Apple Books was removed from the store and thus removed from my Library. I had to do a little searching to dig up the Apple receipt. But this isn't cool, I know that it is only a couple bucks lost but how is it that I buy a book and it's gone and I can't download it to read?
>
> I attached the receipt. If you were to look up the book on the store, you'd see there are other versions for sale but just not this version with the same book cover. Obviously this worries me a bit that if books are taken off the service then you lose your access to read them even after you buy them.[2]

9.      Nearly all of the e-books and audiobooks sold by Apple are actually intellectual property that is licensed to the company by the copyright owners. These licensing arrangements mean that unlike in a true sale, Defendant can never pass title of any licensed books or audiobooks it claims to be selling to consumers.  The copyright owner can terminate the license for whatever reason, requiring Defendant to pull the book out of the libraries of the users who already purchased the book.  Defendant can take

---

[2] https://discussions.apple.com/thread/253818541?sortBy=rank (Last accessed March 31, 2025).

3

that action without prior warning, and without providing any type of refund or remuneration to consumers.

10.    Defendant misrepresents the true nature of its consumers' book purchases as a sale for the primary purpose of being able to charge higher prices than if it were to convey to consumers that they are only purchasing a revokable license to view or listen to the book.

11.    To compare, unlike a retail store that obtains title from an e-book or audiobook's owner that it then conveys to the consumer purchaser for value, Defendant's licensing agreements prevent it from ever being able to pass title to the e-book or audiobook it claims to sell to consumers. Unlike a purchase that conveys title, access to e-books and audiobooks purchased from Defendant can be revoked. In other words, from the consumer's perspective, it's more akin to a rental than it is a "purchase."

12.    Accordingly, Plaintiffs, on behalf of themselves and the Classes (as defined below), now seek to hold Apple accountable for its unfair, deceptive, and unlawful practices of representing to consumers that they are purchasing e-books and audiobooks, when at best consumers are only getting a license allowing them access. Plaintiffs seek to bring claims on behalf of a Nationwide Class and a California Subclass (collectively "Classes") of consumers who purchased digital goods from Apple and are seeking, among other things, to recover damages and injunctive or declaratory relief ordering Defendant to disgorge all revenues unjustly received from the proposed Classes due to its intentional and unlawful practice of misleading consumers when purchasing digital goods.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because at least one class member is of diverse citizenship from Defendant, there are more

than 100 class members, and upon information and belief, the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and interest.

14.    This Court has jurisdiction over Defendant because it operates in this District, is headquartered in this District, and a substantial part of the unlawful business practices which give rise to this action occurred in this District.

15.    Venue is proper in this District under 28 U.S.C. § 1391 because the events that gave rise to the claims occurred in substantial part in this District and because Defendant is subject to personal jurisdiction in this District.

## **PARTIES**

16.    Jennifer Morehouse ("Plaintiff Morehouse") is a citizen of California. Plaintiff Morehouse currently resides, and at all relevant times to this action did reside, in La Mesa, California.

17.    Keri Smith ("Plaintiff Smith") is a citizen of California. Plaintiff Smith currently resides, and at all relevant times did reside, in Burlingame, California.

18.    Defendant Apple is a California corporation with a principal place of business at One Apple Park Way, Cupertino, California 95014. Apple regularly conducts business throughout California and in this judicial district and regularly offers digital goods, including e-books and audiobooks, for sale within this judicial district. Apple reported $94.9 billion in revenue for its fiscal 2024 fourth quarter alone.[3] Apple's annual revenue for 2024 was approximately $391 billion.

## **FACTUAL ALLEGATIONS**

---

[3] Press Release, Apple, Apple Reports Fourth Quarter Results (October 31, 2024); https://www.apple.com/newsroom/2024/10/apple-reports-fourth-quarter-results/ (Last accessed March 31, 2025).

19.     One of the services Apple provides to its users is Apple Books. Apple Books, formerly known as iBooks, is Defendant's e-book reading and store application for its iOS, iPadOS and macOS operating systems and devices.

20.     Through the Apple Books application, consumers can access the Apple Books Store, formerly known as the iBook Store. The Apple Books Store (formerly iBook Store) is an ePub content sales and delivery system that delivers eBooks to any iOS device such as the iPad, iPhone, and iPod Touch. Thus, consumers can purchase digital goods, including e-books and audiobooks, and subsequently access that digital content on their devices.

21.     While a consumer can browse selections and available books in a web browser, a consumer can only make a purchase from Apple Books using the Apple Books application on an Apple device.

22.     Except for content owned outright by Apple, an e-book or audiobook sold by Defendant is actually licensed to Apple by the book's owner. These licensing arrangements mean that, unlike in a true sale, Defendant can never pass title of any licensed digital good, including audiobooks and e-books, it claims to be selling consumers. Thus, upon information and belief, when a licensing agreement terminates for whatever reason, Defendant is required to pull the e-book or audiobook from the consumer's access, which it does without prior warning, and without providing any type of refund or remuneration to consumers.

23.     To compare, unlike a retail store that obtains title to that book from a book's owner that it then conveys to the consumer purchaser for value, Defendant's licensing agreements prevent it from *ever* being able to pass title to the books it purportedly "sold" to consumers on its Apple Books application. Unlike a purchase that conveys title, access to digital goods, like e-books and audiobooks,

6

purchased from Defendant can be revoked. In other works, when "buying" an e-book or audiobook from Apple, a consumer is really getting something more akin to a rental than a purchase.

24.    This is contrary to a consumer's expectation that the item they are purchasing will remain available to them for as long as they want it – since they bought it.

25.    Defendant misrepresents the true nature of what exactly is being "sold" to consumers for the simple reason that it can charge more money - Defendant can charge higher prices for a "purchase" than if it were to convey to consumers that they are only purchasing a revokable license to view or listen to the e-book or audiobook they think they own.

26.    This is not the first time Apple has used unlawful tactics to charge higher prices to its consumers for digital goods, like e-books and audiobooks. In 2012, the United States Department of Justice alleged Apple orchestrated a price-fixing conspiracy with five e-book publishers, whereby Apple and the publishers conspired to fix prices and e-book retailers' freedom to compete on price, thus increasing the price that consumers paid for e-books.[4] Apple was found liable for orchestrating the conspiracy on July 10, 2014.[5] In July 2014, Apple agreed to pay $400 million to e-book purchasers to settle damages actions brought by the attorneys general of 33 states and territories and a private class of e-book purchasers.[6]

**A.    <u>Apple Books Purchase Process</u>**

27.    When browsing e-books and audiobooks on the Apple Books store, books are often listed on a main home page in various categories. Consumers can browse the categories and then click

---

[4] Press Release, Department of Justice, Supreme Court Rejects Apple's Request to Review E-Books Antitrust Conspiracy Findings (March 7, 2016); https://www.justice.gov/archives/opa/pr/supreme-court-rejects-apples-request-review-e-books-antitrust-conspiracy-findings (Last accessed March 31, 2025).
[5] *Id.*
[6] *Id.*

on a digital good, such as an e-book, that they are potentially interested in purchasing. Below is a

representative example of what is displayed to the consumer when viewing an e-book for purchase on

the Apple Books Store:



28.     When a consumer wants to purchase the representative e-book example above, the

consumer clicks on the price button, in this case $14.99. After clicking the price to purchase, the

application initiates a pop-up confirmation screen. On this screen, Apple prominently displays a

"purchase" button and expressly notes to the consumer that they are making a "book purchase." A

representative example of the purchase confirmation pop-up screen is below:



29.     The user clicks the blue "purchase" button in order to complete the purchase of the e-book, and Apple sends the consumer a receipt for the purchase.[7]

30.     The pop-up purchase screen does not include a link to any Terms of Service or any link to any license information such that consumers are able to obtain any information, or any even any indication, that they are purchasing a revokable license rather than the good.

31.     The same purchasing process and purchasing language applies to audio books. Like with an e-book, when a consumer chooses to purchase an audiobook, they see the same preview screen layout displaying a price for the digital good, as demonstrated below with the previous e-book example:

---

[7] When using Apple Pay, after clicking on the purchase amount, the Apple Pay authorization screen pops-up. On that screen, the buttons say "Book Purchase" or "Audiobook Purchase." The difference in language is immaterial, as is whether using ApplePay or not, because Apple represents to consumers that they are "purchasing" the book or e-book under both circumstances.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17      32.     When a consumer wants to purchase the representative audiobook, the consumer clicks

18  on the price button, in this case $16.99. After clicking the price to purchase, the application initiates a

19  pop-up confirmation screen. On this pop-up screen, Apple prominently displays a blue "purchase"

20  button and expressly notes to the consumer that they are making an "audiobook purchase."[8] An

21  example of the purchase confirmation pop-up screen is below:

22

23
24
25
26
27
28

[8] *See* fn. 7.

1
2
3
4
5
6
7
8
9
10
11



12    33.    At no point on the audiobooks purchase page, pop-up, or information page does

13  Defendant convey that it is not actually selling the audiobook. To the contrary, it displays a price for

14  purchase and expressly states an "purchase," leading reasonable consumers to believe they are

15
16  purchasing an audiobook.

17    34.    The pop-up purchase screen does not provide a link to any Terms of Service or any link

18  to any license information such that consumers are able to obtain any information, or any even any

19  indication, that they are purchasing a revokable license to the audiobook rather than the audiobook.

20
21    35.    Apple clearly displays a "purchase" button to consumers, representing to consumers

22  that they are purchasing the e-book or audiobook from Apple.

23    36.    Despite charging a price that is commensurate with a true sale, once Defendant's

24  licensing agreement with a content owner terminates, Apple revokes the consumers' access and use of

25  the e-book or audiobook.

26
27
28

CLASS ACTION COMPLAINT

37.     Defendant failed to receive affirmative any acknowledgement from Plaintiffs or the members of the Class or Subclass that they understood they were receiving a license, that they had received a complete list of restrictions and conditions of that license, and that the license may be unilaterally revoked.

38.     Defendant failed to provide clear and conspicuous statements to Plaintiffs and members of the Class and Subclass informing consumers that "buying" or "purchasing" the digital good (audiobook or e-book) is a license, and Apple further failed to include a hyperlink, QR Code, or similar method of access that provides full details on the license.

39.     Defendant's representations are misleading because all of its actions relating to the purported sale give the impression that such content is purchased – i.e. the person owns it – when in fact that is not true.

**B.  <u>Plaintiffs' Purchases</u>**

***Plaintiff Morehouse***

40.     Plaintiff Morehouse is, and at all relevant times has been, a resident and citizen of the State of California.

41.     On or about March 19, 2025, Plaintiff Morehouse was searching on Defendant's Apple Books application and found an audiobook, *The Idea of You* by Robinne Lee, that she wanted to purchase.

42.     Plaintiff Morehouse relied on the representations made by Defendant in its Apple Books "store" that it was selling audiobooks, and believed she was purchasing the audiobook.

43.     Plaintiff Morehouse clicked on the purchase button that identified the price as $19.99.

44.     Defendant provided a receipt to Plaintiff Morehouse for the purchase, and likewise, nowhere on that receipt does Defendant convey that Plaintiff Morehouse purchased a license rather than title to the digital good.

45.     At no point prior to, during, or after Plaintiff Morehouse's purchase was she ever informed by Apple that she was not actually purchasing the audiobook but rather a license to access to access the audiobook.

46.     Unbeknownst to Plaintiff Morehouse, Apple does not actually sell the audiobook she purchased, and rarely, if ever, actually sells digital goods. Rather, Apple typically sells a license to access a digital good, like Plaintiff Morehouse's audiobook, on its platform.

47.     Plaintiff Morehouse, and other reasonable consumers, expect that Defendant's Apple Books "stores" and purchases made thereon reflect the same purchases they make day in and day out – that purchasing the item means to acquire that item.

48.     Defendant's false and misleading representations were significant and material misrepresentations that directly influenced Plaintiff Morehouse's purchase. Plaintiff Morehouse relied on this false information in good faith. Had she known the truth, she would not have bought the audiobook for the price that she did.

49.     As a direct consequence of Defendant's actions, Plaintiff Morehouse was financially harmed. She would not have purchased the audiobook at the same price absent Defendant's misrepresentation.

50.     Defendant's misrepresentations were material because Plaintiff Morehouse and other reasonable consumers rely on such information when making purchasing decisions.

51.     Moreover, Plaintiff Morehouse was damaged because Defendant falsely represented the nature of the audiobook she purchased. Given that Apple owns some – but not all - of its content

13

1   outright, Plaintiff Morehouse and other consumers cannot know whether they are purchasing title to

2   the book, or just a license. Thus, Plaintiff Morehouse is susceptible to this reoccurring harm because

3   she cannot be certain that Defendant has corrected the deceptive digital good purchases, and she desires

4   to purchase digital goods from Defendant in the future.

5   ***Plaintiff Smith***

6       52.     Plaintiff Smith is, and at all relevant times has been, a resident and citizen of the State

7   of California.

8       53.     On or about March 11, 2025, Plaintiff Smith was searching on Defendant's Apple Books

9   application and found an e-book, *Starting Over in Maple Bay* by Brittney Joy, that she wanted to

10  purchase.

11      54.     Plaintiff Smith relied on the representations made by Defendant in its Apple Books

12  "store" that it was selling the e-book, and believed she was purchasing an e-book.

13      55.     Plaintiff Smith clicked on the purchase button that identified the price as $4.99.

14      56.     Defendant provided a summary of the order to Plaintiff Smith, and likewise, nowhere

15  on that order does Defendant convey that Plaintiff Smith purchased a license rather than title to the e-

16  book.

17      57.     At no point prior to, during, or after Plaintiff Smith's purchase was she ever informed

18  by Apple that she was not actually purchasing the e-book but rather a license to access the e-book from

19  Apple.

20      58.     Unbeknownst to Plaintiff Smith, Apple does not actually sell the e-book she purchased,

21  and rarely, if ever, actually sells digital goods. Rather, Apple typically sells a license to access a digital

22  good, like Plaintiff Smith's e-book, on its platform.

14

59.    Plaintiff Smith, and other reasonable consumers, expect that Defendant's Apple Books "stores" and purchases made thereon reflect the same purchases they make day in and day out – that purchasing the item means to acquire that item.

60.    Defendant's false and misleading representations were significant and material misrepresentations that directly influenced Plaintiff Smith's purchase. Plaintiff Smith relied on this false information in good faith. Had she known the truth, she would not have bought the digital good for the price that she did.

61.    As a direct consequence of Defendant's actions, Plaintiff Smith was financially harmed. She would not have purchased the digital good at the same price absent Defendant's misrepresentation.

62.    Defendant's misrepresentations were material because Plaintiff Smith and other reasonable consumers rely on such information when making purchasing decisions.

63.    Moreover, Plaintiff Smith was damaged because Defendant falsely represented the nature of the e-book she purchased. Given that Apple owns some – but not all - of its content outright, Plaintiff Smith and other consumers cannot know whether they are purchasing title to the book, or just a license. Thus, Plaintiff Smith is susceptible to this reoccurring harm because she cannot be certain that Defendant has corrected the deceptive digital good purchases, and she desires to purchase digital goods from Defendant in the future.

## CLASS ACTION ALLEGATIONS

64.    Plaintiffs bring this action pursuant to Rule 23(b)(2), (b)(3) and (c)(4) on behalf of themselves and on behalf of all other persons similarly situated.

65.    Plaintiffs propose the following Classes, subject to amendment as appropriate:

> **Nationwide Class:** All individuals who purchased an e-book or audiobook from Apple online within the Class Period.

**California Subclass:** All individuals who purchased an e-book or audiobook from Apple online in the State of California within the Class Period.

66. Excluded from the Class are (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of the Defendant or any entity in which the Defendant have a controlling interest, (b) any legal counsel or employee of legal counsel for the Defendant, and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

67. The "Class Period" begins on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ends on the date of entry of judgment.

68. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4).

69. Plaintiffs reserve the right to modify or amend the definitions of the proposed Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

70. **Numerosity.** This action is appropriately suited for a class action. Upon information and belief, the members of the Class are so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

71. **Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual

16

Class Members. These common legal and factual questions include, but are not limited to, the following:

- Whether Defendant made false or misleading statements of fact in its advertisements of digital goods;

- Whether Defendant's policies, procedures, and actions concerning its advertising of digital goods were unfair, deceptive, and/or misleading;

- Whether Defendant clearly, conspicuously, and accurately disclosed the nature of its digital good sales;

- Whether the alleged conduct of Defendant violates California Civil Code §1750 *et seq*., California Business & Professions Code §17500 *et seq*., California Business & Professions Code §17500.6 *et seq*. and/or California Business & Professions Code §17200 *et seq*.

- Whether Defendant's marketing, advertising, and/or promotional material for its digital goods is deceptive, unfair, and/or misleading;

- Whether Defendant's conduct was deceptive, unfair, and/or misleading;

- Whether Plaintiffs and Class and Sub-class Members are entitled to monetary damages as a result of Defendant's conduct; and

- Whether Plaintiffs and the Class and Sub-class Members are entitled to equitable, declaratory and/or injunctive relief and the nature of that relief.

72. **Typicality.** Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class Members have been injured through the uniform misconduct described above and herein. Moreover, Plaintiffs' claims are typical of the Class Members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of

the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

73. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs and the Class are all customers of Defendant and were harmed by Defendant's misconduct outlined herein. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

74. **Superiority.** A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

75. Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class. Unless a Class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiffs

and the members of the Class will have suffered, and will continue to suffer, damages. Unless a Class-wide injunction is issued, Defendant will likely continue to benefit from the violations alleged, and the members of the Class and the general public may continue being unfairly treated.

76.    Because Plaintiffs seek injunctive relief for Class Members, the prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendant in this action. Prosecution as a class action will eliminate the possibility of repetitious litigation.

77.    Defendant has acted and refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.

78.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

## COUNT I
### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")
### Cal. Bus. & Prof. Code §§17500.6 *et seq.*
### (Plaintiffs on behalf of themselves and the Class and Subclass)

79.    Plaintiffs, on behalf of themselves and those similarly situated, repeat and reallege each and every allegation contained in Paragraphs 1-78 as if fully set forth herein.

80.    Plaintiffs bring this claim individually, and on behalf of the members of the Class and Subclass against Defendant.

81.    Defendant has violated Section 17500.6 of the Business and Professions Code.

82.    Defendant provides "Digital Goods" for sale as defined in Section 17500.6(a), and Plaintiffs and members of the Class and Subclass purchased Digital Goods from Defendant.

83.    Defendant has engaged in false or misleading advertising in violation of the FAL. Defendant advertised, and continues to advertise, Digital Goods for "purchase" when, in fact, they the content is not available to buy – only to be licensed.  Defendant's statements in that regard are false, misleading, and/or have the tendency and likelihood to deceive reasonable consumers. *Brady v. Bayer*

19

*Corp.*, 26 Cal. App. 5th 1156, 1173 (2018) ("these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'").  To state a claim under the FAL "'it is necessary only to show that "members of the public are likely to be deceived."' Id. (citations omitted).

84.     Defendant engaged in deceptive advertising practices within California and nationwide These practices involved promoting its good and services through online platforms that contained untrue or misleading statements about the advertised digital goods. Notably, Defendant knew that that the information being disseminated was inaccurate, as consumers reasonably expect that when they buy something, they own it in perpetuity.

85.     As alleged more fully above, Defendant advertises to consumers that its Digital Goods are available for purchase when, , in fact, Defendant is only selling a license to access the Digital Good.

86.     Defendant failed to receive any affirmative acknowledgement from Plaintiffs or the members of the Class or Subclass that they understood they were only receiving a license, that they had received a complete list of restrictions and conditions of that license, and that the license may be unilaterally revoked as required by Cal. Bus. & Prof. Code §§17500.6(b)(1)(A).

87.     Defendant failed to provide clear and conspicuous statements to Plaintiffs and members of the Class and Subclass informing consumers that in "buying" or "purchasing" the digital good the consumer is merely obtaining a revokable license, in violation of Cal. Bus. & Prof. Code §§17500.6(b)(1)(B). As part of the purchase process, Apple further failed to include a hyperlink, QR Code, or similar method of access that provides full details on the license likewise in violation of Cal. Bus. & Prof. Code §§17500.6(b)(1)(B).

88.     The deceptive advertising practices employed by Defendant led Plaintiffs and the members of the Class and Subclass to make decisions based on inaccurate information. Defendant's

misrepresentations were intended to induce reliance, and Plaintiffs reasonably relied on these misrepresentations when making their purchasing decisions.

89.    Class-wide reliance can be inferred because Defendant's misrepresentations were material.

90.    Defendant's misrepresentations were a substantial factor and proximate cause in damages to Plaintiffs and members of the Class and Subclass.

91.    Plaintiffs and members of the Class and Subclass were injured as a direct and proximate result of Defendant's conduct.

92.    Plaintiffs and the members of the Class and Subclass were injured as a direct and proximate result of Defendant's conduct because they would not have purchased the digital goods if they had known the truth, and/or they overpaid for the digital goods because the products were sold at a price premium due to the misrepresentation.

## COUNT II
### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")
### Cal. Bus. & Prof. Code §§17500 *et seq.*
### (Plaintiffs on behalf of themselves and the Class and Subclass)

93.    Plaintiffs, on behalf of themselves and those similarly situated repeat and reallege each and every allegation contained in Paragraphs 1-92 as if fully set forth herein.

94.    Plaintiffs bring this claim individually, and on behalf of the Class and Subclass against Defendant.

95.    Defendant has violated Section 17500 of the Business and Professions Code.

96.    As alleged more fully above, Defendant has made and disseminated false and misleading statements of facts in its advertisements to Plaintiffs and members of the Class regarding its sale of digital goods.

97.    Defendant's representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendant knew, or should have known, that these statements were inaccurate and misleading.

98.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs reasonably relied on the statements when making purchasing decisions. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchasing decisions.

99.    Class-wide reliance can be inferred because Defendant's misrepresentations were material in that they concerned the cost of the digital good.

100.    Defendant's misrepresentations were a substantial factor and proximate cause in damages to Plaintiffs and members of the Class and Subclass.

101.    Plaintiffs and members of the Class and Subclass were injured as a direct and proximate result of Defendant's conduct.

102.    Plaintiffs and the members of the Class and Subclass were injured as a direct and proximate result of Defendant's conduct because they would not have purchased the digital goods if they had known the truth, and/or they overpaid for the digital goods because the products were sold at a price premium due to the misrepresentation.

## COUNT III
### VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA"), Cal. Civ. Code 1750 *et seq.*
### (Plaintiffs on behalf of themselves and the Class and Subclass)

103.    Plaintiffs on behalf of themselves and those similarly situated, repeat and reallege each and every allegation contained in Paragraphs 1-102 as if fully set forth herein.

104.    Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

105.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.

106.    Defendant is a "person" as defined as Cal. Civ. Code § 1761(c).

107.    Plaintiffs and members of the Class and Subclass are "consumers" as defined in Cal. Civ. Code § 1761(d).

108.    The items that Plaintiffs and members of the Class and Subclass purchased are "goods" as defined in Cal. Civ. Code § 1761(a).

109.    Purchases made by Plaintiffs and members of the Class and Subclass constitute "transactions" as defined by Cal. Civ. Code § 1761(e).

110.    Defendant represented that to Plaintiffs and the Class and Subclass that they were buying digital content, rather than a revokable license to access digital content, and in doing so violated Cal. Civ. Code § 1770(a)(14) (representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law) and Cal. Civ. Code § 1770(a)(5) (representing that goods or services have characteristics, uses, benefits, or qualities that they do not have); Cal. Civ. Code § 1770(a)(9) (advertising goods or services with intent not to sell them as advertised); and Cal. Civ. Code 1770(19) (inserting an unconscionable provision in a contract.)

111.    Defendant's practice of misrepresenting, actively concealing, and/or failing to disclose the true nature of digital content purchases made on its platform violated and continues to violate the CLRA.

112.    Defendant's misrepresentations were likely to deceive Plaintiffs and reasonable consumers. Defendant knew, or should have known, that these statements and representations were inaccurate and misleading.

113.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs reasonably relied on them when making their purchasing decisions. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchasing decisions.

114.    Defendant's deceptive practices significantly impacted Plaintiffs and the members of the Class. The misleading information presented, and the omissions made, were material, meaning a reasonable person would consider them and be impacted by them heavily when deciding whether to purchase digital content from Defendant. This false information and omissions directly caused financial harm.

115.    Class-wide reliance can be inferred because Defendant's misrepresentations were material in that a reasonable consumer would consider them important when deciding whether to make a purchase.

116.    Plaintiffs and members of the Class and Subclass were injured as a direct and proximate result of Defendant's conduct, and Plaintiffs and members of the Class and Subclass suffered ascertainable loss caused by Defendant's conduct, as outlined herein.

117.    Plaintiffs, on behalf of themselves and the Clas and Subclass, seek an order enjoining Defendant's unfair acts or practices under Cal. Civ. Code § 1780(a)(2). Specifically, Plaintiffs ask the Court to order Defendant to (1) immediately adopt language informing consumers that they are not purchasing the digital good but rather a revokable license to access the digital good; or (2) start providing title rather than license to consumers purchasing digital goods.

118.    Contemporaneous with the filing of this Complaint, Plaintiffs, through counsel, will provide notice to Defendant pursuant to Cal. Civ. Code § 1782(a) via certified mail. As the 30-day response period has not yet lapsed, Plaintiffs' claims no damages pursuant to this count, but will timely amend this Complaint after expiration of the response period to seek money damages and punitive

damages under the CLRA. At this time, Plaintiffs seek only injunctive or other equitable relief under the CLRA as described above.

**<u>COUNT IV</u>**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code § 17200 *et seq.***
**(Plaintiffs on behalf of herself and the Class)**

119. Plaintiffs, on behalf of themselves and those similarly situated, repeat and reallege each and every allegation contained in Paragraphs 1-118 as if fully set forth herein.

120. Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

121. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

122. With respect to "unfair" practices, in the consumer context, courts "generally continu[e] to apply a broad[] standard . . . encompassing business practices that 'offend[] an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 854 (N.D. Cal. 2022) (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886-87, 85 Cal. Rptr. 2d 301 (1999)).

123. Defendant engaged in unfair competition and unfair, unlawful or fraudulent business practices through the conduct, statements, and omissions described herein, and by knowingly and intentionally disguising the true nature of what consumers were actually purchasing when purchasing digital goods.

124. Defendant also engaged in unfair competition and unfair, unlawful or fraudulent business practices through the conduct, statements, and omissions described herein, and by knowingly

and intentionally misrepresenting to consumers that they were purchasing digital goods rather than purchasing a revokable license to access digital goods.

125.    Defendant should have disclosed to Plaintiffs and those similarly situated that it was not selling consumers the digital content but rather selling consumers a revokable license to access the digital goods.

126.    Defendant's acts and practices have deceived Plaintiffs and those similarly situated, and are likely to deceive the public. Plaintiffs and members of the Class all suffered financial injury due to Defendant's unfair and unlawful conduct in violation of the UCL.

127.    The injuries suffered by Plaintiffs and those similarly situated are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and those similarly situated should have reasonably avoided.

128.    Defendant's acts and practices are unlawful because it claims to sell digital goods to its consumers but in actuality, it is only selling revokable licenses to access those digital goods in violation of the CLRA and FLA, and which constitutes unfair competition and/or unlawful, unfair, or fraudulent business practices in violation of the UCL. Plaintiffs and those similarly situated have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.

129.    Plaintiffs seek to enjoin further unlawful and unfair acts or practices by Defendant under Cal. Bus. & Prof. Code § 17203.

130.    Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair and/or unlawful practices; to order Defendant to refund its consumers; to order Defendant to implement systems sufficient to fully inform consumers of the true nature of digital good purchases and ensure

Defendant complies with those disclosures; to restore, via restitution or disgorgement, any monies Defendant acquired by unfair competition, as provided by Cal. Bus. & Prof. Code §§ 17203 & 3345; and for such other relief as may be just and proper.

**COUNT V**
**NEGLIGENT MISREPRESENTATION AND OMISSION**
**(Plaintiffs on behalf of themselves and the Class and Subclass)**

131.   Plaintiffs, on behalf of themselves and those similarly situated, repeat and reallege each and every allegation contained in Paragraphs 1-130 as if fully set forth herein.

132.   Defendant made false and misleading statements of fact and material omissions concerning the nature of its digital content purchases. These representations were false and misleading because Defendant falsely and misleadingly represented that it was selling digital goods to Plaintiffs and other consumers when it was actually only selling a revokable license to access the digital good. Defendant knew or should have known that the representations it was making were false and misleading at the time it made them and/or acted recklessly in making the misrepresentations.

133.   Defendant had a duty to accurately disclose the truth about its digital good purchases, including that the purchase was actually for a revokable license and that access to that purchase could later be revoked. Reasonable consumers were likely to be deceived, and were deceived, by Defendant's failure to disclose material information.

134.   Defendant knew that when Plaintiffs and the members of the Class were purchasing items on its "store," that they were truly only purchasing a revokable license to access the good through Apple rather than purchasing ownership of the digital good.

135.   Defendant's representations were made with the intent that Plaintiffs and the members of the Class and Subclass would pay higher prices than they otherwise would have spent and/or

27

purchase items they otherwise would not have purchased had they known the true nature of the purchase.

136.    Defendant employed this scheme in order to incentivize consumers with the sole intent of maximizing profits to the detriment of those same consumers.

137.    Defendant intended that Plaintiffs, and all members of the Class and Subclass, rely on its false and misleading representations. Plaintiffs and all members of the Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiffs and the members of the Class and Subclass would not have purchased the items from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiffs and the Class members' reliance was a substantial factor in causing their harm.

138.    Had the omitted information been disclosed, Plaintiffs and the members of the Class and Subclass reasonably would have behaved differently. Among other things, they would not have purchased the items they purchased from Defendant or, at the very least, would not have paid as much for the items as they ultimately did.

139.    As a direct and proximate result of the above, Plaintiffs and the members of the Class have suffered damages because: (a) they would not have purchased Defendant's items if they had known that the representations were false, and/or (b) they overpaid for the items because the items were sold at a premium price due to the misrepresentations.

140.    Plaintiffs and the members of the Class and Subclass are also entitled to punitive or exemplary damages. Defendant, through senior executives and officers, undertook the illegal acts intentionally or with conscious disregard of the rights of Plaintiffs and the Class, and did so with fraud, malice, and/or oppression.

141.    Based on the allegations above, Defendant's actions were misleading and fraudulent because Defendant intended to and did deceive and injure Plaintiffs and the members of the Class. Based on the allegations above, Defendant's conduct was made with malice because Defendant acted with the intent to cause and did actually cause injury to Plaintiffs and all members of the Class, and because Defendant willfully and knowingly disregarded the rights of Plaintiffs and all members of the Class.

**<u>COUNT VI</u>**
**FRAUD – INTENTIONAL MISREPRESENTATION AND OMISSION**
**(Plaintiffs on behalf of themselves and the Class and Subclass)**

142.    Plaintiffs, on behalf of themselves and those similarly situated, repeat and reallege each and every allegation contained in Paragraphs 1-141 as if fully set forth herein.

143.    Defendant made false and misleading statements of fact and material omissions concerning the true nature of the digital goods purchased by its consumers. These representations were false and misleading because Defendant represented that it was selling digital goods to Plaintiffs and other consumers when it was actually only selling a revokable license to the digital good. Defendant knew or should have known that the representations it was making were false and misleading at the time it made them and/or acted recklessly in making the misrepresentations.

144.    Defendant had a duty to accurately disclose the truth about its digital goods purchases, including that the purchase was actually for a revokable license and that access to that purchase could later be revoked. Reasonable consumers were likely to be deceived, and were deceived, by Defendant's failure to disclose material information.

145.    Defendant knew that when Plaintiffs and the members of the Class were purchasing items on its "store," that they were truly only purchasing a revokable license to access the good through Apple rather than purchasing ownership of the digital good.

29

146.    Defendant's representations were made with the intent that Plaintiffs and the members of the Class would pay higher prices than they otherwise would have spent and/or purchase items they otherwise would not have purchased had they known the true nature of the purchase.

147.    Defendant employed this scheme in order to incentivize consumers with the sole intent of maximizing profits to the detriment of those same consumers.

148.    Defendant intended that Plaintiffs, and all members of the Class, rely on its false and misleading representations. Plaintiffs and all members of the Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiffs and the members of the Class would not have purchased the items from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiffs and the Class members' reliance was a substantial factor in causing their harm.

149.    Had the omitted information been disclosed, Plaintiffs and the members of the Class reasonably would have behaved differently. Among other things, they would not have purchased the items they purchased from Defendant or, at the very least, would not have paid as much for the items as they ultimately did.

150.    As a direct and proximate result of the above, Plaintiffs and the members of the Class have suffered damages because: (a) they would not have purchased Defendant's items if they had known that the representations were false, and/or (b) they overpaid for the items because the items were sold at a premium price due to the misrepresentations.

151.    Plaintiffs and the members of the Class and Subclass are also entitled to punitive or exemplary damages. Defendant, through senior executives and officers, undertook the illegal acts intentionally or with conscious disregard of the rights of Plaintiffs and the Class, and did so with fraud, malice, and/or oppression.

152.    Based on the allegations above, Defendant's actions were misleading and fraudulent because Defendant intended to and did deceive and injure Plaintiffs and the members of the Class. Based on the allegations above, Defendant's conduct was made with malice because Defendant acted with the intent to cause and did cause injury to Plaintiffs and all members of the Class, and because Defendant willfully and knowingly disregarded the rights of Plaintiffs and all members of the Class.

**COUNT VII**
**BREACH OF CONTRACT**
**(Plaintiffs on behalf of themselves and the Class and Subclass)**

153.    Plaintiffs on behalf of themselves and those similarly situated, repeat and reallege each and every allegation contained in Paragraphs 1-152 as if fully set forth herein.

154.    Defendant offered digital goods for sale to Plaintiffs and members of the Class and Subclass under the terms advertised through Defendant's application.

155.    The terms provided that Plaintiffs and members of the Class and Subclass were purchasing digital goods from Defendant in exchange for money.

156.    The terms of Defendant's offer provided that Defendant would sell, and Plaintiffs and members of the Class and Subclass would purchase, a digital good in exchange for an agreed upon amount of money.

157.    At no point before, during, or after the purchase process did Defendant ever inform Plaintiffs and members of the Class and Subclass that they were purchasing a revokable license rather a good.

158.    Defendant identified the transactions with Plaintiffs and members of the Class and Subclass as a "purchase," an "audiobook purchase" or "book purchase."

159.    Despite the terms dictating that consumers, like Plaintiffs and members of the Class and Subclass, purchased the book or audiobook (the digital good), Defendant provided them with only a

31

revokable license to access that particular digital good rather than providing consumers the digital good they purchased.

160.    Plaintiffs and the members of the Class and Subclass accepted Defendant's offer and paid Defendant for the digital goods they purchased, thereby satisfying all conditions of their contracts.

161.    Defendant breached the contracts with Plaintiffs and the members of the Class and Subclass by failing to provide the digital good and instead providing a different product than what was purchased – i.e. a revokable license.

162.    As a direct and proximate result of Defendant's breaches, Plaintiffs and the members of the Class were deprived of the benefit of their bargained-for exchange and have suffered damages in an amount to be established at trial.

<u>**COUNT VII**</u>
**UNJUST ENRICHMENT**
**(Plaintiffs on behalf of themselves and members of the Class and Subclass)**

163.    Plaintiffs on behalf of themselves and those similarly situated, repeat and reallege each and every allegation contained in Paragraphs 1-162 as if fully set forth herein.

164.    Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

165.    Plaintiffs and the members of the Class conferred a benefit on Defendant, which Defendant knew about, when it advertised for sale, and Plaintiffs and members of the Class purchased, digital goods from Defendant.

166.    Plaintiffs and the members of the Class conferred a benefit on Defendant, which Defendant knew about, when it advertised for sale, and Plaintiffs and members of the Class purchased, digital goods from Defendant.

167.    Plaintiffs and members of the Class were, and many continue to be, consumers of Defendant's goods and services. They reasonably believed that Defendant would not falsely advertise or misleadingly advertised digital goods for sale. Plaintiffs and members of the Class suffered financial losses when they were deceived into purchasing revokable licenses when they were led to believe they were purchasing a digital good. By offering digital goods for sale and then only providing a revokable license to the good, Defendant misleads consumers about what they are purchasing and tricks customers into paying more than they should or would.

168.    This deceptive practice undermines fair competition and allows Defendant to profit unfairly. Defendant has accepted and retained these benefits as a result of its sales of digital goods, making Defendant's retention of them unjust.

169.    By its wrongful acts and omission described herein, including engaging in deceitful and misleading advertising practices, Defendant was unjustly enriched at the expense of Plaintiffs and the members of the Class and Subclass.

170.    Plaintiffs' and the Class members' detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

171.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and the members of the Class and Subclass. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

172.    Plaintiffs and the members of the Class and Subclass have been damaged as a direct and proximate result of Defendant's unjust enrichment.

173.    Plaintiffs and the members of the Class and Subclass are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

174.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the members of the Class and Subclass are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment against Defendant in the form of an Order:

A.    Certifying this action as a class action under Rule 23(b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' undersigned attorneys as Class Counsel to represent the Class Members;

B.    Naming Plaintiffs as the representatives of the representative of the Class;

C.    Declaring that Defendant's conduct violated the laws referenced herein;

D.    Finding in favor of Plaintiffs and the Class on all counts asserted herein;

E.    Awarding actual, consequential, punitive, statutory and treble damages;

F.    Awarding applicable prejudgment post-judgment interest on all amounts awarded;

G.    For injunctive relief as pleaded or as the Court may deem proper;

H.    For disgorgement and restitution to Plaintiffs and the Class all monies received or collective from Plaintiffs and the Class and all forms of equitable relief;

I.    Awarding Plaintiffs and the Class reasonable attorneys' fees and expenses and costs of suit;

J.    Awarding damages in an amount to be determined at trial; and

K.    For such other and further relief as the Court may deem proper.

1

## <u>DEMAND FOR JURY TRIAL</u>

2

3
Plaintiffs hereby demand trial by jury as to all triable issues.

4

5
Dated: April 1, 2025

/s/*Kyle McLean*

6
Kyle McLean (SBN 330580)
Lisa R. Considine (*pro hac vice forthcoming*)

7
Leslie L. Pescia (*pro hac vice forthcoming*)
SIRI & GLIMSTAD LLP

8
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017

9
Telephone: 212-532-1091
Facsimile: 646-417-5967

10
Email: kmclean@sirillp.com

11
Email: lconsidine@sirillp.com
Email: lpescia@sirillp.com

12
*Attorneys for Plaintiffs and the Proposed Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT